Hotchkiss v. Hoy.

————•◆•————

HENRY HOTCHKISS *vs.* LAWRENCE HOY.

The statute (Gen. Statutes, tit. 14, sec. 3,) provides for the mode of passing when any wagon, carriage, &c., shall meet or overtake a team on the high-way. Held that by *team* was meant a vehicle, with the animals drawing it, used for carrying loads, as distinguished from one used for carrying persons.

A defendant, in a case appealed by him, had pleaded the general issue in the lower court and was allowed in the appellate court to file a demurrer. Held that the matter lay within the discretion of the court, and was not a subject of error.

There is no law which forbids the court to allow a defendant to withdraw a plea of the general issue and file a demurrer. Such a change of plea may tend to the expediting of a trial and the saving of expense.

ACTION upon the statute concerning the driving of carriages, brought by the plaintiff in his own behalf and in behalf of the town of Waterbury.

The suit was originally brought before a justice of the peace. The defendant pleaded the general issue, and the justice rendered judgment against him. He then appealed to the Superior Court,* in which court he moved to be allowed to file a demurrer, and, permission being given, filed a special demurrer to the declaration.

The first count of the declaration was as follows :—

That on the 29th day of January, 1867, there was, and still is, a public highway leading from the town of Cheshire to

_____

* The appeal was taken in the year 1867—before the law was passed, giving appellate jurisdiction in such cases to the Court of Common Pleas.

said town of Waterbury, used by all the citizens of the state, with their stages, coaches, wagons, chaises, sleighs, cutters, or any other carriages for the conveyance of persons, to go, return, pass and repass, at their free will and pleasure. And the plaintiff says that on the day and year last aforesaid, in driving over said highway, from said Waterbury to said Cheshire, a team of six horses, drawing a sleigh and containing a pleasure party, he overtook and came up behind the defendant with his said team, in said Waterbury, the defendant having one horse drawing a sleigh, which he was driving, traveling the same course with the plaintiff, in and over said highway from the point aforesaid. And the plaintiff says that, having occasion to pass the defendant with his said team, and finding it necessary and practicable, he then and there repeatedly requested the defendant to turn his said team so far on one side of the road as to give said team of the plaintiff an opportunity to pass by it, but the defendant unnecessarily, wrongfully and unlawfully drove his said team in a slow walk immediately forward of the plaintiff's said team, in said highway, for a distance of about two miles, to a point near the house of one George Hine, in the town of Prospect in said county, with an intent wrongfully to hinder, vex, annoy and incommode the plaintiff, and to impede and obstruct said highway; and said highway was then and there impeded and obstructed by the defendant, and the plaintiff was unable with his said team to pass the defendant with his said team for the distance aforesaid, and the plaintiff was not permitted by the defendant to drive faster with his said team than in a slow walk as aforesaid, for the distance aforesaid, though the plaintiff might and otherwise would have done. And the plaintiff says that he was wrongfully, unnecessarily, wantonly, unlawfully and maliciously detained, stopped, hindered, annoyed and impeded on said highway with his said team in manner aforesaid, though the defendant well knew that it was necessary and practicable to turn his team so far on one side of the road as to give the plaintiff with his said team an opportunity to pass by it as requested; contrary to the form of the said statute. Whereby, and by force of said statute,

the defendant has forfeited the sum of seven dollars, one-half to the treasury of said town of Waterbury, and one-half to the plaintiff; and that thereby and by force of said statute, an action has accrued to the plaintiff to recover the same for the uses aforesaid.

The second count did not vary from the first in any point material to the questions made in the case.

The special demurrer filed by the defendant was as follows:

The defendant defends and says that the plaintiff's declaration and each count thereof are insufficient in the law for the said plaintiff to have or maintain his said action against him the said defendant; and for special causes of demurrer the defendant assigns the following, to wit:—1. That it is not alleged in said declaration, or in either count thereof, what section or sections of the statute therein referred to is sued upon, nor what particular section or sections is claimed to have been violated.—2. That it is not alleged in said declaration, or in either count of the same, that the defendant was at the time, &c., "a teamster."—3. That it is not alleged in said declaration, or in either count of the same, that the defendant at the time, &c., was driving "a team."—4. That there is no allegation in said declaration, or in either count thereof, that the facts therein stated and relied upon to constitute a cause of action, took place in the town of Waterbury, and there is no statement of fact to justify joining the town of Waterbury as plaintiff, and there is no allegation that a demand was made, or that it was necessary or practicable for the defendant to turn out of the road while in the town of Waterbury.— 5. That there is no direct and positive allegation in said declaration, or in either count thereof, that the said Hotchkiss with his team had occasion to pass the defendant and his horse and sleigh; nor is it alleged in said either count directly and positively that it was necessary and practicable for the defendant to turn his team so far on one side of the road as to give the vehicle of said Hotchkiss an opportunity to pass; and if either of such facts appear they are stated by way of recital merely. Wherefore he, the said defendant, prays judgment, &c.

The Superior Court (*Beardsley, J.*) sustained the demurrer, and rendered judgment for the defendant. The plaintiff thereupon filed a motion in error, assigning the following errors:—1. That the defendant having pleaded the general issue in the justice court, to which said case was originally brought, and in that court filed no other plea, and having appealed his case to the Superior Court after judgment had been rendered against him in said justice court upon that issue, said Superior Court erred in allowing the defendant, against the remonstrance of the plaintiff, to file a demurrer to the plaintiff's declaration; also, that said court erred in allowing said demurrer to be filed at so late a period as the September term of said court, A. D. 1874; that under the statutes of this state and the rules of practice in said Superior Court, said case had stood upon the general issue, and therefore said demurrer, being a change of plea, if allowed at all, should only have been allowed upon the payment of costs by the defendant to the plaintiff.—2. That said court erred in sustaining said demurrer, and in finding said declaration insufficient; that the special causes and reasons of demurrer assigned by the defendant in his said plea are each and every of them insufficient in law to sustain said plea, and should have been so held by said court.

*Ives*, for the plaintiff.

*H. Stoddard*, for the defendant.

FOSTER, J. Two questions are presented on this record:—

1. Ought the court below, under the circumstances detailed in the motion, to have allowed the defendant to withdraw his plea of the general issue and interpose a demurrer?

2. That having been done, should the issue then presented have been decided as it was, that the demurrer was well taken, or should it have been overruled?

An act of our colonial legislature, passed in May, 1738, would doubtless, if still in force, control the decision of the former of these questions. That act, entitled "An Act for the regulating of Pleas," is in these words:—

" Whereas, it is found by experience that admitting demurrers to the declaration to be made in any case after issue hath been joined and verdict thereon given, tends greatly to the delay of justice and enhancing bills of cost :—*It is enacted*, &c., That no defendant shall, in the trial of any cause, be admitted to demur to the declaration after he hath pleaded, to issue, and a judgment thereon hath been given by any court ; any law, usage or custom to the contrary notwithstanding."

We do not discover that this statute has ever been expressly repealed. It continued among our laws, through the various revisions, down to that of 1808, inclusive. It was omitted in the revision of 1821, and in all subsequent revisions. We consider it therefore no longer in force.

This was manifestly an act not declaratory but amendatory of the common law. That is shown by the preamble. On its repeal, which must be considered as accomplished in 1821, being omitted in the revision of that year, the common law was restored, unless that law has been modified or changed by legislation. The course of legislation has been one of increasing liberality to parties litigant on the subject of pleading, not only allowing them to amend any defect, mistake or informality in their pleas, but to change them and plead anew, when the party supposes that he has missed the ground of his plea and can plead a different one that will save him in his cause. The party making such amendments or changes is liable to costs, at the discretion of the court.

The plaintiff insists that the decision below was contrary to the law of pleading and the rule of the court. The rules of the court must not be so construed as to take away the power conferred by statute on the court. The cases referred to by the plaintiff do not seem to us to bear out his claim.

The principal point, applicable to this case, decided in *Wickwire* v. *The State*, 19 Conn., 477, was, that a defendant shall not be permitted to plead by way of defence any matter which has been admitted by his previous pleadings. Now a plea of the general issue is no admission of the sufficiency of the facts thus denied.

The case of *Hoadley* v. *Smith*, 36 Conn., 372, certainly

does hold that a defendant may not interpose a demurrer to a bill in chancery, as a right, at any stage of the proceedings; that is, without withdrawing his former plea, and without consent of or notice to the court. The court say,— " A party cannot plead to the merits and demur at the same time, or at different times, so that both will be pending at the same time." We find nothing in this case to sustain the claim of the plaintiff.

*Adams* v. *Way*, 32 Conn., 160, was on a guaranty. Judge DUTTON, in giving the opinion of the court, speaks of the order of pleading, not as applicable to a question of this character, but as showing that a fact, counted on in a declaration, if denied, might be proved, though it might turn out insufficient to uphold a judgment. The party should demur if the facts alleged were insufficient.

In *McAllister* v. *Clark*, 33 Conn., 253, the Superior Court denied a motion to substitute a plea of the general issue for a demurrer. On motion in error and motion for a new trial, the court said there was no error, and they denied the motion for a new trial. This case had been previously tried in the Superior Court, and reserved for the advice of the Court of Errors. That advice was, to overrule the demurrer, and render judgment for the plaintiff. It was in that stage of the case that the defendant moved to withdraw his demurrer, and plead the general issue. Permission was refused, and the decision was affirmed.

Here it will be noticed that the defendant, after going through the Superior Court and the Court of Errors on a demurrer, and getting a decision against him, sought, by changing his demurrer to a plea of the general issue, to have a trial on the facts. The court said, " There must be an end of litigation, and it is obvious that a right in a defendant, as often as one plea is decided against him, to change it for another, would render litigation so interminable as not to be endured."

In the present case it will be borne in mind that the purpose was a directly opposite one; to withdraw the general issue, before trial, and enter a demurrer; thus to shorten, in

fact to terminate, not prolong, litigation. The important point in the case of *McAllister* v. *Clark*, and which is directly applicable to this case, is, that the practice of allowing a change of plea was a matter of discretion, not determined by law, or rule of court, and not therefore a subject of error or of a motion for a new trial. Such, undoubtedly, is the well established doctrine. *Hollister* v. *Hollister*, 38 Conn., 180.

These views and principles are decisive against the claim of the plaintiff, upon the question we are now considering, both as to change of pleas and payment of costs. Were we authorized to revise and correct the manner in which the court below exercised its discretion, we are by no means prepared to say we should have decided otherwise, except perhaps as to the payment of costs. Withdrawing the general issue and substituting a demurrer is widely different from interposing a plea in bar, or any other plea which might produce delay and compel the plaintiff to call witnesses which might not be necessary under the general issue. So far from causing delay, the effect of this demurrer was manifestly to save the time of the court and the parties. Why spend time in inquiring into the truth of facts, all of which the demurrer admitted to be true ? If found true by a verdict, if they gave the plaintiff no right to recover, on motion in arrest the declaration must have been pronounced insufficient to uphold a judgment, and if judgment had been rendered on the verdict it must have been reversed on error. Under such circumstances it seems like the merest trifling to insist on trying the case on the general issue because the defendant had once pleaded it, instead of permitting him to withdraw that plea and dispose of the whole matter summarily by a demurrer.

2. The remaining question is as to the sufficiency of the declaration.

The action is brought on the statute concerning the driving of carriages and the management of steamboats, (Rev. Stat. of 1866, 320 ;) and a recovery must be had, if had at all, on the third section of that act.

The first section of the act makes certain provisions in respect to the drivers of any stages, coaches, wagons, chaises,

sleighs, cutters, or any other carriages for the conveyance of persons, and for the manner in which the drivers of such carriages shall pass each other, each turning to the right, &c., when they meet in the public highway, and prescribes penalties for the violation of such provisions.

The second section imposes penalties upon every driver of any such vehicle who shall, by negligence or carelessness, drive or run his vehicle against another vehicle or any horse passing the highway, and cause any injury to such vehicle, or any person in it, or to any such horse, or shall drive or run his vehicle against any person traveling on horseback or on foot and injure him, &c.; or who shall overtake any vehicle traveling the same course and drive or run his vehicle against such vehicle and injure the same, &c., &c. The party injured by any violation of the provisions of this section is entitled to treble damages, and every driver who wilfully and with design commits such injury, shall, in addition, forfeit to the treasury of the state a sum not exceeding one hundred dollars. The owner of any stage or other vehicle is made liable for the damages, if the driver is unable to pay the same.

The third section of the act is as follows:—" When any vehicle of the above description shall meet or overtake a team in the public highway, and shall have occasion to pass the same, the teamster shall, when necessary and practicable, turn his team so far on one side of the road as to give such vehicle an opportunity to pass by it; and every teamster who shall be guilty of a breach of this section shall forfeit seven dollars, one half to him who shall prosecute to effect, and the other half to the treasury of the town where the offence is committed."

Now the declaration, in the first count, sets forth that the plaintiff was driving a team of six horses, drawing a sleigh containing a pleasure party; that he overtook and came up behind the defendant, having one horse, drawing a sleigh which he was driving, traveling the same way, &c. That having occasion to pass the defendant with his team, and finding it necessary and practicable, he repeatedly requested

the defendant to turn his team so far on one side of the road as to give the team of the plaintiff an opportunity to pass by it, and the defendant unnecessarily, wrongfully, and unlawfully, drove his team in a slow walk, immediately forward of the plaintiff, for a distance of two miles, with an intent wrongfully to hinder, vex, annoy and incommode the plaintiff; and the highway was impeded and obstructed by the defendant, and the plaintiff was unable, with his team, to pass the defendant, and was not permitted to drive faster than a slow walk for the distance aforesaid.

The second count of the declaration is like the first, so far as the description of the vehicles and horses is concerned. The sleigh of the plaintiff is described as containing thirty persons, and the sleigh of the defendant as containing himself and two other persons. The overtaking of the defendant by the plaintiff, and the obstruction of the way, not turning out, &c., by the defendant, are stated substantially as in the first count.

Now it appears from this declaration that the vehicles used by the plaintiff and defendant were of like character. Both were sleighs, and both were in use for the conveyance of persons. The plaintiff's sleigh was drawn by six horses, and contained thirty persons; the defendant's sleigh was drawn by one horse and contained three persons. Both these vehicles are clearly within the description of those mentioned in the first and second sections of the act on which this suit is brought.

Now the plaintiff in his sleigh overtakes the defendant in his sleigh on the highway, and seeks to hold him liable, under the third section of this statute, for obstructing the way, for not turning out and allowing him to pass. The question is, do the acts charged in this declaration, against this defendant, bring him within the purview of this third section?

"When any vehicle of the above description [that is, any vehicle for the conveyance of persons,] shall meet or overtake a team in the public highway, and shall have occasion to pass the same, the teamster shall," &c., &c. The plaintiff says that when he overtook the defendant he overtook a team

within the meaning of this third section, and that the term clearly comprehends, includes and describes the horse, and vehicle attached to him, which was driven by the defendant. Possibly it may, under certain circumstances, in the common speech of the day. We do not propose to expend much learning on the meaning of this word. It must be remembered that the first section of this act, after enumerating almost every species of vehicle then in use, and then adding " any other carriages for the conveyance of persons," provides how they shall pass each other when they meet in the highway. It is enacted in the third section that when " any vehicle of the above description shall meet or overtake a team, the teamster shall, when necessary and practicable, turn his team," &c., &c. Is it possible that the legislature meant to make no distinction between a " vehicle for the conveyance of persons," named in the first section, and "a team," named in the third section ? We think the distinction is perfectly obvious. One has reference to the conveyance of persons— the other, of property. When vehicles for the conveyance of persons meet, each is to turn to the right. When such vehicles meet or overtake a team, the teamster shall, when necessary and practicable, turn his team so far on one side of the road as to give such vehicle an opportunity to pass, thus giving the teamster his choice as to the side of the road and not compelling him to turn to the right. Suppose these parties had met on the public highway, and the defendant had turned to the left in order to pass ; would the plaintiff have yielded to him, and allowed him to choose his side of the road, because he was a teamster and driving a team ?

It may be said that this case is within the mischief intended to be remedied, and that therefore the act should be so construed as to bring the party within it. It is a sufficient answer that the statute is a penal one, and is not therefore to be extended by construction. It must appear that the party comes clearly within the terms of the statute or he cannot be subjected. The plaintiff is not without adequate remedy at the common law, if he has been obstructed or impeded when traveling on the public highway.

It should not perhaps escape notice that the provisions made in the first section of this act, apply, as to subject matter, only to cases of carriages meeting each other. Nothing is said, in that section, as to cases where one overtakes another. The legislature may have supposed that where vehicles for conveying persons were going in the same direction, the rate of speed might not vary so greatly as to require any legislation as to the mode of passing. The third section provides what shall be done when these vehicles either meet or overtake a team, plainly recognizing, as we think, a difference between these vehicles and teams. Teams would travel more slowly than such vehicles, and might not be able to turn out so easily, and so special provision was made as to the manner in which they should pass each other.

We think this declaration is fatally defective on various grounds. We doubt if it is shown that the town of Waterbury has such an interest in the question as to justify making it a party plaintiff. It is unnecessary however to point out further defects. We are quite satisfied that the demurrer was well taken, and that there is no error in the judgment complained of.

In this opinion the other judges concurred.